Marshall, C. J.
This is an original proceeding in this court for a writ of mandamus seeking to compel the hoard of deputy state supervisors *204 of elections of Crawford county, Ohio, to recount all the votes east at the recent primary election for the nomination of judge of the court of common pleas of said county on the Democratic ticket.
The petition alleges that the relator Benjamin Meek and one Charles Gallinger were rival candidates for the nomination and that the official count disclosed that this relator Meek had 2,718 votes and that Gallinger had 2,740 votes, that 6,45'6 Democratic votes were cast at that election, and that the total vote cast for the nomination for judge was 998 less than the entire number of Democratic votes polled.
The petition contains no allegations of fraud, mistake, or other irregularity, and although the petition contains the allegation that the canvass made by the precinct judges and clerks does not correctly state the result of said primary election, and the further allegation that if the votes had all been truly counted and correct returns made thereof it would show that the relator received a larger number of votes than his opponent, these allegations are apparently only the opinion of the relator, and a conclusion stated by him without any facts being stated from which such conclusion could reasonably be drawn.
It is not claimed that in a single precinct mistakes had been made or fraud perpetrated, but on the contrary in another allegation of the petition the relator has with commendable ethics stated that 998 Democratic votes, cast at said primary were not counted for either of the candidates for common pleas judge, without stating in terms that *205 any of said 998 Democratic voters had in fact voted for either of said candidates.
It is apparent therefore that the relator has no knowledge of any particular facts or circumstances which would support his "belief that there were votes east which were not counted, and it is equally apparent that he is only entertaining the hope that a recount of the ballots might result in 23 additional votes being found for relator.
The petition further discloses that the relator does not claim there were less than 2,740 votes cast for Gallinger, or that any votes actually east for relator were counted for Gallinger.
It must further be kept in mind that this proceeding is not an election contest. It is an action for the extraordinary writ of mandamus to compel officials to perform acts which relator claims are enjoined upon them by law. "Whether or not an election contest would lie' at the suit of a defeated candidate at a primary election, we have neither decided nor considered. We are only concerned with the question whether by the provisions of Section 4984, General Code, a clear legal duty is enjoined upon the board of deputy state supervisors of elections to break the seal of all the ballots cast in each and every precinct, and recount them, or whether on the other hand it is the duty of the said board only to count the tallies of the votes or abstract of votes certified to it by the precinct judges and clerks. That section reads as follows:
“On the following Thursday after the primary at ten o’clock forenoon the board of deputy state *206 supervisors of elections of each county shall meet and canvass the vote and certify the result or declare the same in the manner hereinafter provided. The controlling committee of any party ^participating in the primary may have one representative present during the canvass of the vote. In the case of candidates for nomination by primary whose nomination papers are required to be filed with the state supervisor of elections, such boards of deputy state supervisors shall, on blanks provided for that purpose, make full and accurate returns of votes cast for each candidate and shall certify duplicate copies thereof to the state supervisor who shall proceed to canvass all of the votes cast for the respective candidates above mentioned and shall declare the result, and shall, not less than forty days before the election, certify the same together with a form of official ballot therefor to the proper boards of deputy state supervisors of the several counties of the state. In case of nominations for offices in districts comprising more than one county, the boards of deputy [state] supervisors of elections in such counties shall certify the results of the primary as regards such district candidates to the board of deputy state supervisors of the county in such district in which the nomination papers were originally filed, which board shall proceed to canvass all of the returns so made of the votes cast for the respective candidates and shall declare the result and certify the names of the successful candidates to the boards of deputy state supervisors of the several counties comprising such district to be placed on the ballot. *207 In case of nominations for offices within a county the results of the primary shall be declared by the board of deputy state supervisors of such county.”
If by the foregoing provisions a duty is enjoined upon the board to recount the ballots, that duty does not depend upon a request being made by one or more of the candidates. This controversy therefore turns upon a proper construction of that portion of the above-quoted section which reads as follows:
“On the following Thursday after the primary at ten o’clock forenoon the board of deputy state supervisors of elections of each county shall meet, and canvass the vote and certify the result,” etc.
By reference to this Section 4984 it will be séeii that practically the same language is used in defining the duties of the board • of deputy state supervisors as is used in Section 4983, in defining the duties of the judges and clerks at the close of the polls in each precinct. Standing alone this would seem to indicate that the same duty is imposed upon a county board as is imposed upon the judges and clerks. If, however, we examine the latter provisions of Section 4984, it will be seen that practically the same language is employed in defining the duties of the state supervis- or as to those candidates whose nomination papers are required to be filed with the state supervisor. It is apparent that a colossal task would be imposed upon the county board if required to recount all of the ballots cast at a primary election in the county, and this would be especially true in the more populous counties of the state, and it is *208 further apparent that an impossible task would be imposed upon the state supervisor. The impossibility of this latter task is emphasized when it is seen that it would be impossible for the ballots to be in the possession of the county board and of the state supervisor at the same time.
Again it would seem utterly absurd to have two separate and distinct counts of the votes for county candidates, and three separate and distinct counts of votes for state candidates made in exactly the same way.
It is a well-known fact, of which this court may take judicial notice, that ever since the enactment of this statute the votes have been counted by the precinct judges and clerks, and that the deputy state supervisors of the respective counties have only counted the tallies without examination of any ballots other than disputed ballots. This fact must be equally well known to the Legislature, and if this was not the legislative intent that body has had abundant opportunity to make the law more definite.
This theory and determination of the matter find support in the fact that Section 4983 requires .that if the judges are in doubt, or any difference of opinion exists concerning one or more ballots, such ballots shall be sealed up and marked “disputed ballots,” and while Section 4984 makes no specific provision for such ballots being counted by the board of deputy state supervisors, when Sections 4983 and 4984 are read together it must be conclusively inferred that when disputed ballots are transmitted to the board of deputy state supervisors with the information that such disputed *209 ballots have not been counted, or, if counted, only-in part, that it shall be the duty of the board of deputy state supervisors to complete the count. No provision having been made in Section 4983 for the determination of undisputed ballots, there cannot even be the inference of a duty to count undisputed ballots, on the part of the board of deputy state supervisors.
Sections 4949 to 4991-1, inclusive, General Code, apply to primary elections, and Sections 5055 to 5123-4, inclusive, General Code, apply to general elections. The two chapters are separate and distinct, and it was apparently designed by the Legislature that full provision be made in the former chapter for the conduct of primary elections and full provision made in the latter chapter for the conduct of general elections. Although the same ground seems to be covered in each, it is provided in Section 4967, General Code, that county boards of deputy state supervisors of elections shall have all the powers granted and perform all the duties imposed by the laws governing general elections. By reference to Section 5090 it is found that concerning general elections a duty is specifically imposed upon the board of deputy state supervisors to count the uncounted disputed ballots which may be transmitted to said board by the precinct judges and clerks, and this must be held to be one of the duties referable to the primary elections provided by Section 4967.
The relator in this ease apparently places strong reliance upon the inference to be drawn from the fact that 998 more votes were cast for other offices than for that of common pleas judge. If it *210 were made to appear that this is the only county in the state where this occurred, and if it further be made to appear that the year 1924 is the only year when such a thing occurred, the presumption of a mistake might not be a violent one. A careful study of the returns of both the primary and general elections since 1912 discloses that the average vote cast for judicial offices, is approximately two-thirds of the average vote cast for other offices at the same elections. In the case at bar the vote cast for common pleas judge on the Democratic ticket is approximately 80 per cent, of the full Democratic vote polled. The annual reports published by the secretary of state giving all this information are public general information of which this court may take judicial notice.
We have so far discussed this case upon principle, but it should be added that this identical statute must have been under consideration by this court in the decision of the case of State, ex rel. Wood, v. Russell et al., Deputy State Supervisors, 101 Ohio St., 365, 130 N. E., 19. We quote the following from page 367 of the opinion, of 101 Ohio St., (130 N. E., 20):
“No provision of the statute has been called to our attention which confers upon the deputy state supervisors the right to make a recount of the ballots at any election held under their supervision.”
Two sessions of the Legislature have been held since the announcement of that decision, and the Legislature has not seen fit to amend the statute or make it more definite as a result of that pronouncement. We find nothing in the statutes enjoining a duty upon the board of elections to *211 count any ballots other, than disputed ballots. A careful search of all the laws applying to both primary and general elections discloses that the undisputed ballots can only be counted in case of a contested election, by the court or body trying such contest, and then only in open court, or in open session of such body, and in the presence of the officers having the custody thereof. Section 5090-1, General Code.
The demurrer must therefore be sustained, and the writ refused.

Writ refused.

Robinson, Jones, Matthias, Day, Allen, and Conn, JJ., concur.